IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALEXANDER B. ARIZMENDI, AE0789 | ) ) ) | No. C 12-4555 CRB (PR) |
| Petitioner, | ) ) | ORDER DENYING PETITION |
| vs. | ) ) | FOR A WRIT OF HABEAS CORPUS |
| P. BRAZELTON, Warden, | ) ) | |
| Respondent. | ) ) | |

Petitioner, a state prisoner at San Quentin State Prison, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging a conviction and sentence from Santa Clara County Superior Court.  For the reasons that follow, the petition will be denied.

## STATEMENT OF THE CASE

On June 22, 2010, petitioner was convicted by a jury of two counts of possession of an assault weapon, making criminal threats, negligent discharge of a firearm and misdemeanor being under the influence.  The jury found true that petitioner personally used a firearm in connection with two of the counts and petitioner admitted an enhancement that he was on bail when he committed one

of the counts.  Petitioner was sentenced to 11 years, four months in state prison.

On September 27, 2011, the California Court of Appeal affirmed the judgment of the trial court and, on December 1, 2011, the Supreme Court of California denied review.  The California courts also denied petitioner's requests for collateral relief.

On August 30, 2012, petitioner filed the instant federal petition for a writ of habeas corpus under § 2254.

On February 4, 2013, the court found that the petition, liberally construed, stated cognizable claims under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted.  Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.

## STATEMENT OF FACTS

The California Court of Appeal summarized the facts of the case as follows:

> SAN JOSE CASE
> On January 28, 2008, at 10:00 p.m., Jesus Rodriguez and George Bracamonte were leaving Bracamonte's home at 544 North 16th Street (544) when they heard someone yell from 556 North 16th Street (556), a residence that was one or two houses and 40 to 50 feet away on the same side of the street as 544.  They then saw that person pull a lever of what looked like an AK–47 assault rifle, point the gun at them, and exclaim "I know who you guys are and I'm going to get you ... fuckers."  The two then hid behind a car.  They called the police after the person went inside 556.  They told the responding officers what had happened and gave a general description of the gunman.  Their description lacked detail because it was dark.  Other officers arrived, secured the area around 556, conducted a surveillance of 556, ran license checks on two vehicles parked on the driveway, and learned that one of the vehicles was registered to defendant.  At some point, defendant's wife exited 556, got in one of the vehicles, and drove away.  When officers stopped and arrested her, she revealed that there was an 11–month–old infant sleeping upstairs in a bedroom.  Later, defendant left 556 and displayed himself as fitting the general description of the gunman.  He walked across the street.  He continued down the sidewalk for six or eight houses where he encountered officers who took him into custody.  Defendant was under the influence of cocaine.  He denied that any weapons were in the house.  He stated that there was an 11–month–old infant sleeping in the upstairs bedroom.  He did not respond to questions whether anyone else or animals such as dogs

2

were in the house.  He admitted to an altercation with two men who were harassing him in front of his house.  He accused them of displaying gang signs at him and planning to vandalize his car.  He admitted telling them to "fuck off."  At that point, the officers had not identified defendant as the gunman, did not know who was in 556, and were planning to let defendant's wife back inside 556 to retrieve her baby.

At least four officers drew their guns and announced themselves at the entrance to 556.  After hearing no response, they entered 556 to search for people, weapons, or dogs.  An officer went into a room to make sure that no one was inside and saw a Norinco MAK–90 assault rifle protruding from a box.

MOUNTAIN VIEW CASE

On September 21, 2008, at 2:20 a.m., police responded to residents' reports of having heard shots in the Rengstorff Avenue area.  They searched the apartment complex behind defendant's residence but found nothing.

The same weekend, defendant's wife stayed with her mother in Watsonville.  The wife's demeanor provoked the mother to call the Mountain View Police to make a welfare check on defendant.  Police responded to defendant's residence and received no response.  They found an open door, called out for defendant, and received no response.  They entered the residence and found defendant lying on a bed with a loaded Bushmaster 223 machine pistol strapped to his chest with live and expended bullets in the room.  Defendant had a blood alcohol content of .18 percent and a positive test for the prescription drug codeine, which makes worse alcohol's effect on the human body.  A window screen in the room had been taken off, and the window sill had marks consistent with powder burns from weapon fire.  Defendant's truck was parked 15 feet outside the window.  The truck had bullet holes through it and bullet fragments in it.

People v. Arizmendi, 2011 WL 4449680 * 1-2 (Cal. Ct. App., Sep. 27, 2011).

**DISCUSSION**

A.      Standard of Review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the

3

claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are

4

binding on the state courts and only those holdings need be "reasonably" applied. Id.

The standard of review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim.  In such a case, which applies to several claims petitioner raises here, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.  2003); Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000). When confronted with such a decision, a federal court should conduct an independent review of the record to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law.  Himes, 336 F.3d at 853; Delgado, 223 F.3d at 982.

Petitioner has also presented several unexhausted claims, however the court may deny them of the merits if they are not colorable.  See 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (holding that an unexhausted petition may be denied on the merits when it is perfectly clear that the applicant does not raise even a colorable federal claim).

B.    Claims

Petitioner raises six[1] claims for relief under § 2254: (1) consolidation of the cases violated due process, the right against self-incrimination and the right to a speedy trial; (2) state assault weapons ban statute violates the Second

---

[1] Several separate claims have been combined as they are related.

Amendment; (3) ineffective assistance of trial and appellate counsel; (4) sentencing errors; (5) insufficient evidence for criminal threats count and negligent discharge of a firearm count; and (6) prosecutorial misconduct.  The claims are without merit.

       1.    <u>Consolidation of Cases</u>

Petitioner argues that the consolidation of the two cases violated his due process rights, his right against self-incrimination and his right to a speedy trial.

       <u>Background</u>

The California Court of Appeal summarized the facts below:

> The People sought to consolidate the San Jose and Mountain View cases "because the offenses are either crimes of the same class or connected together in their commission."  The prosecutor explained: "They arise out of a situation where the defendant is in his home or near his home on both occasions.  He has an assault rifle in both occasions.  He's under the influence of controlled substances on both occasions.  I think it's clear from our previous discussed facts of each case that they are in the same class.  They don't need to be identical charges for them to be consolidated together.  And the preference is for consolidation.  [¶]  And as far as the strengths and weaknesses of the cases, sounds like counsel are saying the other case is stronger than their own case but each case stands on its own.  [¶]  We believe that it is proper for consolidation, that it is the presumption as well as what should happen in this case based on the similarities of the offenses.  And that there are no-there is no undue prejudice of the defendant in that the People would obviously not be arguing the defendant is a bad person because he did these things.  And we don't believe that the burden of the People would be shifted or lessened because of the fact that there are two incidents that we have to prove.  I mean there are many cases which are consolidated which involve two different robberies of two different banks or whatever which is essentially what this case is about.  Two different incidents involving the same type of behavior, which should be consolidated."

> Defendant objected on the ground that consolidation would unduly prejudice him.  He asserted: "It lightens the burden to the prosecutor because it puts in the mind of the jurors that [defendant] may be a bad guy and lightens their burden.  If the cases were tried separately, they would look at the facts separately, and I think that is the appropriate process that we should go through in this case."  He added: "One of the factors ... is whether one case was weaker than the other and one case is stronger, and that's essentially what

we have here.  [¶]  Unfortunately, [the Mountain View] case is somewhat stronger and [the San Jose] case is somewhat weaker. And the ability of the district attorney to put them together adds to both of them essentially, and I think that is prejudicial to [defendant].  [¶]  I think that there may be conflicting defenses in the two cases, which would probably hinder [defendant] particularly on the second case."

The trial court explained: "I am going to order consolidation of these two Informations at this time.  The Court finds this is of the same class, the common elements or threads I think in both, that he was under the influence in both, and there is an assault weapon alleged in each case, and there is common elements that would make it in my opinion cross-admissible at trial anyway."

Arizmendi, 2011 WL 4449680 * 5-6.

### i. Due Process

Petitioner argues that the consolidation of the cases violated his due process rights.

A joinder, or denial of severance, of counts may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process. Grisby v. Blodgett, 130 F.3d 365, 370 (9th Cir. 1997).  It also may result in the deprivation of the specific constitutional guarantee of the right of confrontation. Id.  A federal court reviewing a state conviction under 28 U.S.C. § 2254 does not concern itself with state law governing severance or joinder in state trials.  Grisby, 130 F.3d at 370.  Nor is it concerned with procedural right to severance afforded in federal trials.  Id.  Its inquiry is limited to the petitioner's right to a fair trial under the United States Constitution.  Id.  To prevail, therefore, the petitioner must demonstrate that the state court's joinder or denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair.  Id.  In addition, the impermissible joinder must have had a substantial and injurious effect or influence in determining the jury's verdict.  Sandoval v. Calderon, 241 F.3d 765, 772 (9th Cir. 2000).

There is a "high risk of undue prejudice whenever . . . joinder of counts

7

allows evidence of other crimes to be introduced in a trial of charges with respect

to which the evidence would otherwise be inadmissible." United States v. Lewis,

787 F.2d 1318, 1322 (9th Cir. 1986).  But joinder generally does not result in

prejudice if the evidence of each crime is simple and distinct (even if the evidence

is not cross admissible), and the jury is properly instructed so that it may

compartmentalize the evidence.  Bean v. Calderon, 163 F.3d 1073, 1085-86 (9th

Cir. 1998).

The California Court of Appeal denied petitioner's claim:

> According to defendant (1) "the only cross-admissible
> evidence was some of the testimony of the firearms expert
> regarding prohibited possession of assault weapons," (2) the
> Mountain View case was more inflammatory than the San Jose
> case because it involved indefensible behavior ("making target
> practice of his vehicle on the street in the middle of a populated
> neighborhood") while the San Jose case involved purposeful
> behavior ("confrontation with specific people in defense of his
> family and property in which no shots were fired"), and (3) "the
> evidence of the negligent shooting in the Mountain View case was
> significantly stronger than the evidence that [defendant] intended
> an unconditional threat in the San Jose case."
>
> We need not, and do not, examine defendant's argument that the
> trial court erred in finding evidence related to the two cases to be
> cross-admissible because "defendant fails to establish that,
> notwithstanding any absence of cross-admissibility, he was
> unfairly prejudiced by joinder of the two murder cases. '"While
> we have held that cross-admissibility ordinarily dispels any
> inference of prejudice, we have never held that the absence of
> cross-admissibility, by itself, sufficed to demonstrate prejudice."'
> [Citations.]  '[E]ven if cross-admissibility did not support
> consolidation of the cases, the absence of cross-admissibility alone
> would not be sufficient to establish prejudice where (1) the
> offenses were properly joinable under section 954, and (2) no other
> factor relevant to the assessment of prejudice demonstrates an
> abuse of discretion.'"  As we discuss below, defendant fails to
> convince us that factors other than the lack, if any, of
> cross-admissibility, demonstrate the need for severance.
>
> Neither offense was especially likely, or more likely than the other,
> to inflame the jury's passions.  In each incident, defendant wielded
> a dangerous weapon while under the influence of a drug.  In the
> San Jose incident, he endangered specific individuals; in the
> Mountain View incident, he endangered the public generally.
> Defendant's argument that the Mountain View case was

appreciably more inflammatory than the San Jose case raises a difference of opinion rather than demonstrates an irrationality in the trial court's implicit opinion.

Similarly, this matter did not involve consolidating a strong Mountain View case with a weak San Jose case to improve the likelihood of conviction in the San Jose case.  Our review of the evidence convinces us that neither case was appreciably stronger than the other.  Defendant's point is that the evidence of a criminal threat in the San Jose case was weak because it was "not particularly specific, immediate or unconditional."  But defendant pointed a gun at the victims and said, "I'm going to get you guys."  And, hearing that, the victims immediately hid behind a car.  Defendant's point again simply raises a difference of opinion rather than demonstrates an abuse of discretion.

Our review of the record fails to disclose any abuse of discretion by the trial court in consolidating the two cases.

Defendant, however, also argues that joinder actually resulted in a denial of fundamental fairness so grossly unfair as to transgress due process.  He claims that the prosecutor urged the jury to consider spillover evidence.  As to this point, he cites the following two arguments made by the prosecutor.

"Now, not only do we have these individual instances, there's corroboration between these cases, as well.  [¶]  You have a situation where-I mean, you don't take these cases-these incidents in a vacuum.  You look at the whole picture.  [¶]  And what we have here is between the cases, we have the defendant who is the gunman in both cases.  [¶]  We have him using alcohol in both cases.  [¶]  We have him using drugs in both cases.  [¶]  We have him possessing illegal assault weapons in both cases.  [¶]  We have him illegally using those assault weapons in each case.  [¶]  We have that he actually is a person who is starting a situation which requires police contact in both cases.  [¶]  We have high round ammunition clips in both indications.  [¶]  We have at least one of the same cars in both cases.  [¶]  In both cases, he causes fear in-he scares people, his neighbors or people who are nearby in both cases.  [¶] ... [¶]  And that's something for you to consider in determining the strength of this case."

"And by threatening people, by using these weapons, by shooting up his-shooting out of his house, these are all factors for you to consider in determining his guilt in this case."

But these brief remarks do not urge the jury to convict in one of the cases based on evidence relevant to the other case as much as they simply highlight obvious similarities in the two cases.  In any event, the trial court instructed the jury that the evidence in the San Jose case was not admissible to prove guilt in the Mountain View case and vice versa as follows: "Each of the counts charged in this

case is a separate crime.  You must consider each count separately and return a separate verdict for each one."   We presume that the jury understood and properly applied the instruction.

Joinder of the cases "did not render defendant's joint trial fundamentally unfair."

Arizmendi, 2011 WL 4449680 * 5-6 (internal citations omitted).

Petitioner has failed to show that the consolidation of the two cases resulted in prejudice great enough to render his trial fundamentally unfair. Petitioner argues here, as he did in his state court appeal that the prosecution's argument encouraged the jury to improperly consider the evidence of one of the counts to find him guilty of the other.  As noted by the state court, the prosecution was not seeking the jury to convict in one case based on the other but was discussing the similarities of the two cases.  The similarities were rather striking in that petitioner was using illegal assault weapons while under the influence of controlled substances in both cases.  These comments did not have a substantial and injurious effect on the jury's verdict

Moreover, the evidence of each crime was simple and distinct and the jury was properly instructed by the trial court to consider each count separately. While much of the evidence was not cross admissible, that factor alone does not render the trial fundamentally unfair in violation of due process.  There was also a great deal of evidence for each case and no risk of one weaker case being consolidated with a stronger case.  Petitioner's conclusory arguments have failed to show that the consolidation of counts rendered the trial fundamentally unfair or that the state court opinion was contrary to established federal law.  This claim is denied.

### ii.  Self-Incrimination

A decision to join charges for trial "may unduly affect a defendant's choice whether to testify" and infringe upon a defendant's due process right to present a

10

defense to a criminal charge.  Comer v. Schriro, 463 F.3d 934, 959 (9th Cir. 2006) (quotation omitted).  To obtain severance in such a situation, a defendant must demonstrate that "he has important testimony to give on some counts and a strong need to refrain from testifying on those he wants severed."  United States v. Nolan, 700 F.2d 479, 483 (9th Cir. 1983).  A defendant bears the burden to "specifically identify the testimony he would offer in his defense so that the trial court can determine if that testimony is important enough to justify severance."  Comer, 463 F.3d at 959.  Additionally, a defendant must make a "convincing demonstration of a strong need to refrain" from testifying about the other charges; a defendant cannot do so when the "government offered sufficient evidence to support the jury's verdict on these counts."  Id. (quoting United States v. Balzano, 916 F.2d 1273, 1283 (7th Cir. 1990).

This claim was denied without a reasoned decision, therefore the court has conducted an independent review of the record.  See Delgado, 223 F.3d at 982. Petitioner testified in his own defense regarding the San Jose and Mountain View cases.  Reporter's Transcript ("RT") at 1232-1394.  With respect to the San Jose case, petitioner stated that he went outside with the rifle just to deter the people from causing any damage to his property or harm his family.  RT at 1246.  He admitted using cocaine the night before but did not remember if he used any the day of the incident.  RT at 1252.  Petitioner stated that the gun was legal in Arizona and he did not know it was illegal in California.  RT at 1255-57. Regarding the Mountain View incident that happened several months later petitioner testified that he was shooting at cans when the rifle jammed, he banged on it to release it, but it accidentally fired hitting his car and friend's barn.  RT at 1259-63.  He stated this did not occur in his residential neighborhood.

In his petition, petitioner argues that he wanted to testify about the

Mountain View case, but would have preferred to remain silent regarding the San Jose case. However, this argument was not presented to the trial court when it considered the motion to consolidate the charges or in later motions to sever. RT at 410-13; 414-16; 473-77.[2]  As petitioner never presented his arguments pursuant to <u>Comer</u> and <u>Nolan</u> with respect to his desire to remain silent for the San Jose case and testify for the Mountain View case, there was no error by the trial court to warrant relief. Nor does he offer specific arguments in his petition on why he needed to refrain from testifying in the San Jose case.[3]

Petitioner testified at great length regarding both incidents and why he should not be found guilty. That the jury did not credit his testimony will not lead to habeas relief and this claim is denied. As will be discussed later there was a great deal of evidence implicating petitioner regardless of his testimony.

### iii.  Speedy Trial

A speedy trial is a fundamental right guaranteed the accused by the Sixth Amendment to the Constitution and imposed by the Due Process Clause of the Fourteenth Amendment on the states.  <u>Klopfer v. North Carolina</u>, 386 U.S. 213, 223 (1967).  No per se rule has been devised to determine whether the right to a speedy trial has been violated. Instead, courts must apply a flexible "functional analysis," <u>Barker v. Wingo</u>, 407 U.S. 514, 522 (1972), and consider and weigh the following factors in evaluating a Sixth Amendment speedy trial claim: (1) length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right;

---

[2] Petitioner has not cited to any portion of the record where this argument was put forward nor did the court find it while reviewing the record.

[3] Petitioner argues the victims never identified him so there was an issue as to identity.  However, when police arrived to the San Jose scene, petitioner told them that he had been in argument with some people in front of his home. RT at 513-14.  Of course petitioner exited his home where the victims stated the man with the gun had entered and the assault weapon was found inside that home.

and (4) prejudice to the defendant.  Doggett v. United States, 505 U.S. 647, 651

(1992); Barker, 407 U.S. at 530.  None of the four factors are either a necessary or

sufficient condition for finding a speedy trial deprivation.  Barker, 407 U.S. at

533.  They are related factors and must be considered together with such other

circumstances as may be relevant.  Id.  The Ninth Circuit considers the second

factor, i.e., the reason for the delay, the "focal inquiry."  United States v. King,

483 F.3d 969, 976 (9th Cir. 2007) (citing United States v. Sears, Roebuck & Co.,

877 F.2d 734, 739-40 (9th Cir. 1989)).

        This claim was also denied without a reasoned decision, therefore the court

has conducted an independent review of the record.  See Delgado, at 982.

Petitioner contends that the consolidation of the two cases resulted in a speedy

trial violation.  The San Jose incident occurred on January 28, 2008, and the

Mountain View incident occurred on September 21, 2008.  On April 16, 2009, the

trial court consolidated the two cases.  RT at 409.  Up to that point and at the

consolidation hearing, petitioner was represented by two attorneys, one for each

case.[4]  One of the attorneys argued against consolidation noting that petitioner

would be forced to waive time so one attorney could be ready for both cases and

further investigation was required for the more recent Mountain View case.  RT at

402-08.  May 1, 2009, was the speedy trial end date for the San Jose case.  RT at

409.  In consolidating the two cases the trial court stated the following regarding

the speedy trial implications during a court hearing on April 16, 2009:

> . . . . the San Jose case, is set for trial.  The last day on that is May
> 1st.  And the Court is also going to find that it's speculative as to
> whether [petitioner] is going to be forced to enter a time waiver, it's
> speculative as to what prejudice, if any, would unearth.  And the
> remedy that the defense could have at that point is a motion so
> sever.

_____

    [4] Petitioner was no longer entitled to appointed counsel for the San Jose case as
he had retained paid counsel on the Mountain View case.  Petition at 13.

13

. . .

Now, the Court is mindful also of [petitioner's] right to have a speedy trial. I am going to place this matter on the trial calendar Monday Morning at 8:30 for trial, and I'm going to indicate that it will be in trial by [May]1st. I'm go to give [defense counsel] enough time to get a motion on file even if it's bare bones on a [motion to suppress]. I understand discussions as to the welfare check whether that's a valid entry into his residence.

And what I would like counsel to do is to confer. And the intent of the Court would be to see if I could keep this case personally. We would have the motion heard on [April] 23rd in the morning and jury selection starting [April] 27th. It would be off the 1st of May, and I think we can get the case done before the 11th.

RT at 409-10.[5]

Despite the court and prosecution ready to commence the case within the speedy trial time, on April 27, 2009, petitioner requested a continuance and waived time after being informed by the court of his speedy trial rights. RT at 478. In December 2009, petitioner against waived time and requested an extension in light of the United States Supreme Court hearing a case in March 2010, regarding the Second Amendment that could effect the charges against him of possession of prohibited firearms. The trial eventually commenced in April 2010.

Petitioner first argues that his April 27, 2009, waiver of time was not proper because there was an off the record conversation where he learned he would need to waive time because one of his lawyers wanted to quit, but then when it was put on the record it was worded is a misleading way. Petition at 15-16. Petitioner does not adequately describe how he was forced to waive time or how the discussion on the record was misleading. Even if petitioner could

---

[5] The prosecutor also noted that the Mountain View case was delayed in municipal court, through not fault of the prosecution, and only recently came to the superior court the prior week and then was promptly moved for consolidation. RT at 406.

14

provide sufficient details regarding this off the record conversation, no such record of this conversation was provided to the state court.  This court cannot consider extra additions to the record that were not before the state court.  <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1398 (2011).

While this case does illustrate a tension between the right to a speedy trial and effective assistance of counsel, petitioner requested multiple trial continuances and never raised a speedy trial violation with the trial court. Moreover, petitioner has failed to demonstrate a speedy trial violation with respect to the factors set forth in <u>Barker</u>.  The trial commenced approximately eleven months late, but the delay was predominately due to petitioner's requests for extensions.  While one request was for counsel to adequately prepare, the other request was to wait for the Supreme Court to hear a relevant case.  In addition to petitioner requesting extensions and not later raising speedy trial violations after the consolidation of cases, he has failed to describe any prejudice from the delay.

The court must also consider "whether the government or the criminal defendant is more to blame" for the delay.  <u>Doggett</u>, 505 U.S. at 651.  Deliberate delay by the government "'to hamper the defense' weighs heavily against the prosecution."  <u>Vermont v. Brillon</u>, 556 U.S. 81, 90 (2009) (quoting <u>Barker</u>, 407 U.S. at 531).  While the consolidation of the cases could be partially responsible for a minor delay of the trial, petitioner has failed to identify other delays caused by the prosecution and a great part of the delay was at the request of petition. Applying the four-factor test, the Supreme Court in <u>Barker</u> found no Sixth Amendment violation where the defendant in a murder case did not request a speedy trial and had not been seriously prejudiced by the more than five-year delay between his arrest and trial, even though more than four years of the delay

1  were attributable to the prosecutor's inability to try a coindictee and get him to

2  testify at the defendant's trial.  Barker, at 533-36.

3      After reviewing the evidence in light of the Barker factors, petitioner has

4  failed to demonstrate that the state court denial of this claim was contrary to

5  established Supreme Court authority.  Therefore, this claim is denied.

6          2.    Second Amendment

7      Petitioner next argues that the California law banning certain assault rifles

8  violates his rights under the Second Amendment.

9      The Second Amendment confers an individual right to own and posses

10  arms for traditionally lawful purposes, such as self-defense within the home.

11  District of Columbia v. Heller, 554 U.S. 570, 709-10 (2008).  The Supreme Court

12  in McDonald v. City of Chicago, 130 S. Ct. 3020 (2010), applied it to

13  municipalities and states under the Fourteenth Amendment.  This does not cast

14  doubt on the validity of prohibitions on the possession of firearms by felons and

15  the mentally ill, laws forbidding the carrying of firearms in such places as schools

16  and government buildings, laws prohibiting dangerous and unusual weapons, or

17  laws imposing limitations on the commercial sale of firearms.  Heller, 554 U.S. at

18  626-27; see, e.g., United States v. Dugan, 657 F.3d 998, 999 (9th Cir. 2011)

19  (rejecting Heller-based challenge to constitutionality of 18 U.S.C. § 922(g)(3)

20  (criminalizing possession of firearms by habitual drug users)); United States v.

21  Potter, 630 F.3d 1260, 1261 (9th Cir. 2011) (rejecting Heller-based challenge to

22  constitutionality of 18 U.S.C.  § 924(c) (criminalizing possession of a firearm in

23  furtherance of drug trafficking)).

24      California Pen. Code § 12280(b)[6] provided, "Any person who, within this

25

26          [6]  At the time of the offense, § 12280 was the operative statute.  Although
27  section 12280 was later renumbered as § 30605 and continued without

28                                        16

state, possesses any assault weapon, except as provided in this chapter, shall be
punished by imprisonment in a county jail for a period not exceeding one year, or
by imprisonment in the state prison." People v. James, 174 Cal. App. 4th 662,
667 (Cal. App. 3 Dist., 2009). The California Court of Appeal denied petitioner's
claim in a reasoned opinion citing Heller and McDonald, and relevant state law
including James that rejected a similar challenge. The Court of Appeal stated:

> The James court analyzed the same argument that defendant
> makes. (James, supra, 174 Cal. App. 4th at ¶. 674–677.) Citing
> Heller, as well as United States v. Miller (1939) 307 U.S. 174
> (Miller), the James court concluded that assault weapons "are at
> least as dangerous and unusual as the short-barreled shotgun at
> issue in [Miller]." (James, supra, at p. 677.) In reaching this
> conclusion, the James court noted that the right to bear arms
> protection in the Second Amendment does not extend to every type
> of weapon. (James, supra, at p. 674.)
>
> As explained by the Heller court, "the type of weapon at issue [in
> Miller] was not eligible for Second Amendment protection: 'In the
> absence of any evidence tending to show that the possession or use
> of a [short-barreled shotgun] at this time has some reasonable
> relationship to the preservation or efficiency of a well regulated
> militia, we cannot say that the Second Amendment guarantees the
> right to keep and bear such an instrument.'" (Heller, supra, 554
> U.S. at p. 622.)
>
> After discussing the types of weapons protected by the Second
> Amendment, the Heller court stated: "Read in isolation, Miller's
> phrase 'part of ordinary military equipment' could mean that only
> those weapons useful in warfare are protected. That would be a
> startling reading of the opinion, since it would mean that the
> National Firearms Act's restrictions on machineguns (not
> challenged in Miller) might be unconstitutional, machineguns
> being useful in warfare in 1939. We think that Miller's 'ordinary
> military equipment' language must be read in tandem with what
> comes after: '[O]rdinarily when called for [militia] service
> [able-bodied] men were expected to appear bearing arms supplied
> by themselves and of the kind in common use at the time.'
> [Citation.] The traditional militia was formed from a pool of men
> bringing arms 'in common use at the time' for lawful purposes like
> self-defense. 'In the colonial and revolutionary war era,
> [small-arms] weapons used by militiamen and weapons used in
> defense of person and home were one and the same.' [Citations.]
> Indeed, that is precisely the way in which the Second Amendment's

_____

substantive change (Stats. 2011, ch. 15 (AB 109) § 550).

17

operative clause ['the right of the people to keep and bear Arms, shall not be infringed'] furthers the purpose announced in its preface ['[a] well regulated Militia, being necessary to the security of a free State']. We therefore read <u>Miller</u> to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." (<u>Heller</u>, supra, 554 U.S. at ¶. 624–625.) Rather, "the right secured by the Second Amendment is not ... a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." (<u>Id</u>. at p. 626.) It is the right to possess and carry weapons typically possessed by law-abiding citizens for lawful purposes such as self-defense. The Second Amendment protects the right to possess a handgun in one's home because handguns are a "class of 'arms' that is overwhelmingly chosen by American society" for the lawful purpose of self-defense. (<u>Heller</u>, supra, at p. 628.) Assault weapons are not. (<u>James</u>, supra, 174 Cal.App.4th at p. 676.)

Accordingly, we agree with the James court and conclude that Penal Code section 12280, subdivision (b), does not prohibit conduct protected by the Second Amendment to the United States Constitution.

<u>Arizmendi</u>, 2011 WL 4449680 *9-10.

Petitioner cannot demonstrate that the state court unreasonably applied clearly established federal law. While <u>Heller</u> and <u>McDonald</u> established that the parameters of the Second Amendment apply to state gun laws, no Supreme Court case has clearly established what those parameters are. In fact, <u>Heller</u> stated that the Second Amendment is not unlimited in scope and can be restricted, as was done by the California law. Thus, the state court decision cannot be AEDPA unreasonable.

Petitioner's additional brief unexhausted arguments presented for this first time in this federal petition are equally meritless and will be denied. <u>See</u> 28 U.S.C. § 2254(b)(2). Petitioner's Fourth Amendment claim is foreclosed by <u>Stone v. Powell</u>, 428 U.S. 465, 481-82, 494 (1976), as he was provided an opportunity to litigate the claim in state court and he moved to suppress the evidence. His claim that the California statutes are unconstitutionally vague is

also denied as the statutes clearly define and delineate the prohibited firearms in specific detail.  See Vlasak v. Superior Court of California, 329 F.3d 683, 688-89 (9th Cir. 2003) (to avoid constitutional vagueness, a statute or ordinance must (1) define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner.)  Petitioner is not entitled to relief on this claim.

>           3.      Ineffective Assistance of Counsel

Petitioner argues that trial counsel was ineffective in the litigation of the motion to suppress evidence and appellate counsel was ineffective for failing to adequately present the issue on appeal.

The Sixth Amendment guarantees the right to effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  To prevail on a claim of ineffective assistance of counsel, petitioner must demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "counsel's deficient performance prejudiced the defense."  Id. at 687-88. Concerning the first element, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Hence, "judicial scrutiny of counsel's performance must be highly deferential." Id. To fulfill the second element, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Id.

For a federal court reviewing a habeas petition brought by a state prisoner, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable," which "is different from asking whether defense

counsel's performance fell below Strickland's standard." Richter v. Harrington, 131 S. Ct. 770, 785 (2011).  "The standards created by Strickland and § 2254(d) are both 'highly deferential' . . . and when the two apply in tandem, review is 'doubly' so." Id. at 788.  The court must ask not "whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Petitioner argues that the San Jose case motion to suppress was not properly litigated, counsel on appeal was ineffective for failing to raise this claim and counsel was ineffective with respect to the Mountain View case motion to suppress.  Petitioner only exhausted the appellate counsel claim, yet the court will deny all the claims on the merits as they are not colorable.  See 28 U.S.C. § 2254(b)(2).

### i. San Jose Case

While this claim was not exhausted the California Court of Appeal did rule on the underlying Fourth Amendment issue with respect to the motion to suppress.  The Court of Appeal discussed the relevant state law and background of the claim:

> [Petitioner] unsuccessfully moved to suppress the MAK–90 during the preliminary hearing and in the trial court.  In opposition, the People argued that "the officers were justified in entering the home without a warrant on two grounds: they had exigent circumstances; and they were doing a protective sweep."  In denying the motion, the trial court explained: "In this matter, the nature of the threat made to [the victims], the kind of weapon that they described the gunman pointing at them, along with the fact that the victims could not identify [petitioner] as the gunman, does support the People's justification that an emergency situation existed which did threaten the lives of the officers, as well as the infant left in the home."
>
> [Petitioner] contends that the warrantless entry into his residence was not justified under any exception to the warrant requirement.  We disagree.
>
> . . .

20

> The rationale of these cases supports our conclusion that the facts of the present case created an exigency that reasonably required an immediate search for the gun. At the time the police commenced the search, they knew that (1) an assault weapon had been used in a serious crime, (2) the weapon had not been retrieved, and (3) the weapon was likely inside [petitioner's house]. The presence of such a weapon creates a special exigency because of its potential threat to human life. The officers also knew that [petitioner] had denied knowing of any weapon in the house. Thus, by accepting [petitioner's] denial in the face of their suspicion that a weapon was inside [his house], they could reasonably infer that someone else could be the gunman and was inside [petitioner's house] with the weapon. Moreover, [petitioner] did not directly answer whether other people besides his baby were inside [the house]. Thus, the officers were not required to accept that [petitioner] was the gunman and had left the gun in a house empty but for an infant. In addition, the officers reasonably intended to allow [petitioner's] wife to enter the house and retrieve her baby rather than force her to wait outside the secured house while the officers obtained a search warrant. The search was therefore justified to deny the wife access to the gun.
>
> The possible presence of a gun and other people in the house created the danger that the gun could be used in another crime or against the officers. The immediate search of the house was not unreasonable, and the trial court did not err in denying [petitioner's] motion to suppress.

Arizmendi, 2011 WL 4449680 *2-5.

It is undisputed that trial counsel filed a motion to suppress, but the court denied the motion. Petitioner argues that trial counsel was ineffective for failing to describe and argue how police only entered petitioner's residence to search for weapons, after petitioner was detained on the street. Petition at 24-25. Petitioner argues that police communication print-outs prove this. Petitioner is mistaken, as trial counsel's motion to suppress set forth these specific facts in his motion to suppress and he argued this at the hearing before the trial court. Clerk's Transcript ("CT") at 66, 121, 130; RT at 206-06. The California Court of Appeal also described these facts. Arizmendi, 2011 WL 4449680 * 1-2. Much of the argument surrounding the evidence involved that petitioner was detained on the street outside of his house prior to the home being searched. At the hearing, trial

21

counsel specifically argued, "[m]ake no mistake, your Honor, the Police were not there inside the home to do anything other than look for weapons." RT at 206. As trial counsel set forth these facts and presented arguments that petitioner now argues should have been presented, there can be no constitutional violation. On appeal, appellate counsel also presented these same facts and arguments. Answer, Exh. C at 4; Exh. D at 3-6, 14-18. Similarly, petitioner cannot demonstrate a constitutional violation as these arguments were properly presented by appellate counsel. This claim is denied.

### ii. Mountain View Case

Petitioner also argues that trial counsel was ineffective for failing to adequately litigate the Fourth Amendment claim in the Mountain View case. In the Mountain View case, petitioner's mother-in-law called the Mountain View Police to perform a welfare check on petitioner. RT at 418-21. Petitioner had earlier called his wife and said he had been in a shootout with police and been shot in the face. RT at 421. The wife heard some sort of gurgling sound and the call shut off. Id. Based on this information police proceeded to petitioner's house. Police arrived at petitioner's house, knocked on the window and door several times, but there was no answer. RT at 422. Police called his cell phone but it went straight to voicemail. Id. Police entered the house through an unlocked back door, shouted out that they were police doing a welfare check several times but did not receive any response. Id. Police then discovered petitioner in a bedroom lying on a bed, but he did not respond when police called out to him. RT at 423. It was then police observed an assault weapon strapped around his arm. RT at 423-24.

Trial counsel did file a motion to suppress regarding this case. CT at 181-85. A hearing was held and the motion was denied. RT at 414-73. Petitioner's

arguments on how trial counsel was ineffective are difficult to discern.  Rather, petitioner contends that once police officers found him lying on a bed and unresponsive to their yells, they should have left and disregarded the weapon, once it was clear he had not previously been shot by police.  This argument is frivolous and meritless.  As trial counsel did file a motion to suppress and petitioner has not sufficiently set forth how trial counsel was ineffective, this claim is denied.

### 4.      Sentencing Errors

Petitioner argues that his sentence resulted from improper enhancements that violated double jeopardy and findings were made by the judge not the jury in violation of due process.

In contrast to the double jeopardy protection against successive prosecutions, the other component of double jeopardy – protection against multiple punishments – is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature.  See Garrett v. United States, 471 U.S. 773, 793 (1985).  Because the substantive power to prescribe crimes and determine punishments is vested with the legislature the question under the double jeopardy clause whether punishments are "multiple" is essentially one of legislative intent.  See Missouri v. Hunter, 459 U.S. 359, 366-68 (1983).  When the legislature intends to impose multiple punishments, as for example in a sentence enhancement for use of a firearm in the crime, there is no double jeopardy.  Plascencia v. Alameda, 467 F.3d 1190, 1204 (9th Cir. 2006) (California Penal Code § 12022.53 does not offend double jeopardy principles).  Nor is there clearly established federal law requiring a state court to consider sentencing enhancements as an element of an offense for purposes of the double jeopardy clause.  Smith v. Hedgpeth, 706 F.3d 1099, 1106 (9th Cir. 2013).

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).

This claim was denied without a reasoned opinion by the state court, therefore the court has conducted an independent review.  See Delgado.  The jury found petitioner guilty of two counts of possession of an assault weapon (Cal. Penal Code § 12280(b)), making criminal threats (Cal. Penal Code § 422), negligent discharge of a firearm (Cal. Penal Code § 246.3(a)) and misdemeanor being under the influence.  CT at 345-50.  The jury also found true that petitioner personally used a firearm in connection with two of the counts (Cal. Penal Code § 12022.5(b)).  CT at 346, 350.  Petitioner admitted to an enhancement (Cal. Penal Code § 12022.1) that he was on bail when he committed one of the crimes.  RT at 560-64.

The trial court imposed a term of two years for negligent discharge of a firearm.  RT at 1573.  The court added five years due to one of the enhancements found by the jury that petitioner personally used a firearm.  RT at 1575.  Petitioner was sentenced to two years and four months for making criminal threats and the enhancement that he personally used a firearm.  RT at 1576-77.  The court added two years due to the enhancement that petitioner was on bail, which he admitted, for a total term of eleven years and four months.  RT at 1578-79.  On one of the counts for possession of an assault weapon, the trial court imposed a sentence of sixteen months, but stayed the sentence.  RT at 1577.  On the other possession of an assault weapon count the court imposed a sentence of eight months, but also stayed it.  RT at 1578.

As set forth above, the jury determined that petitioner used a firearm in

connection with the related counts and petitioner admitted to the enhancement that he committed the crime while on bail.  As these enhancements were not improperly determined by the trial judge, there was no due process violation.

Petitioner also argues that the trial court finding that certain counts and enhancements arose from a single indivisible transaction is contrary to Supreme Court authority.  Yet, the trial court stayed these parts of the sentence, both the sixteen-month and eight-month term pursuant to Cal. Penal Code § 654 to prevent multiple punishments for the same act .  Thus, petitioner is not incarcerated based on this aspect of the sentence that he considers improper.  Thus, there is no inappropriate sentence for the court to provide relief.

To the extent that petitioner argues the firearm enhancements violated double jeopardy, he is mistaken.  Sentence enhancements do not "punish" a defendant within the meaning of double jeopardy.  United States v. Watts, 519 U.S. 148, 154 (1997).  Rather, they increase the given sentence because of the manner in which the crime was committed.  Id.  "[T]he defendant is punished only for the fact that the present offense was carried out in a manner that warrants increased punishment."  Id. at 155 (quoting Witte v. United States, 515 U.S. 389, 403 (1995).)  Sentencing enhancements that increase the penalty for a crime based on the offender's conduct do not offend double jeopardy principles where "a legislature specifically authorizes cumulative punishment under two statutes ...."  Missouri v. Hunter, 459 U.S. at 368.

A plain reading of the firearm enhancement, Cal. Penal Code § 12022.5(b), indicates that the California Legislature intended to impose longer prison sentences for defendants who used certain assault weapons during the commission

of a crime.[7]  The Ninth Circuit has held that a California Penal Code sentencing enhancement does not offend double jeopardy principles.  Plascencia, 467 F.3d at 1204 (rejecting a claim that a sentence enhancement under Penal Code § 12022.53(d) violated the double jeopardy clause); see also May v. Sumner, 622 F.2d 997, 999 (9th Cir. 1980) (holding that the double jeopardy clause was not violated by imposing a sentence enhancement under Penal Code § 12022.5 for a conviction for robbery with a deadly weapon).  This claim is denied.

       5.    Sufficiency of the Evidence

Petitioner contends that there was insufficient evidence to support the making criminal threats count and the negligent discharge of a firearm count. These claims were denied by the state court without a reasoned opinion, therefore the court has conducted an independent review of the record.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, see Jackson v. Virginia, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, see id. at 324.

The Supreme Court has emphasized that "Jackson claims face a high bar in

---

    [7]  Cal. Penal Code § 12022.5(b) states, "[n]otwithstanding subdivision (a), any person who personally uses an assault weapon, as specified in Section 30510 or Section 30515, or a machinegun, as defined in Section 16880, in the commission of a felony or attempted felony, shall be punished by an additional and consecutive term of imprisonment in the state prison for 5, 6, or 10 years."

federal habeas proceedings . . ."  Coleman v. Johnson, 132 S. Ct. 2060, 2062

(2012) (per curiam).  A federal court reviewing collaterally a state court

conviction does not determine whether it is satisfied that the evidence established

guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335, 338 (9th Cir.

1992).  The federal court "determines only whether, 'after viewing the evidence in

the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt.'"  Payne,

982 F.2d at 338 (quoting Jackson, 443 U.S. at 319).   Only if no rational trier of

fact could have found proof of guilt beyond a reasonable doubt, has there been a

due process violation.  Jackson, 443 U.S. at 324.

Petitioner believes there was insufficient evidence to support the criminal

threats finding from the San Jose incident.  Petitioner thought he was justified by

the stand your ground doctrine, though concedes that California does not have

such a law.  Making criminal threats, Cal. Penal Code § 422 states:

> Any person who willfully threatens to commit a crime which will
> result in death or great bodily injury to another person, with the
> specific intent that the statement, made verbally, in writing, or by
> means of an electronic communication device, is to be taken as a
> threat, even if there is no intent of actually carrying it out, which, on
> its face and under the circumstances in which it is made, is so
> unequivocal, unconditional, immediate, and specific as to convey to
> the person threatened, a gravity of purpose and an immediate
> prospect of execution of the threat, and thereby causes that person
> reasonably to be in sustained fear for his or her own safety or for his
> or her immediate family's safety, shall be punished by imprisonment
> in the county jail not to exceed one year, or by imprisonment in the
> state prison.

The testimony from the two victims in the San Jose case was sufficient to

support the jury's finding.  They testified that they had been moving items out of

their uncle's house and were talking once they finished.  RT at 586-87, 744-45.

Then a man yelled, "I know who you guys are" and "I'm going to get you

fuckers".  RT at 587-89.  The victims heard what sounded like a rifle being

cocked.  RT at 589-92, 747-48.  One of the men observed the man point an assault rifle at them.  RT at 590-92.  The men hid behind a mobile home and then later called the police.  RT at 595-602.  Petitioner testified that he confronted the men with his assault rife, though it was not loaded, told them to keep away from his house and may have used profanity.  RT at 1245.  The state court denial of this claim was not contrary to Supreme Court authority as the evidence was sufficient for a rational trier of fact to find guilt beyond a reasonable doubt.  That petitioner erroneously believed he was justified by a stand your ground law is a meritless argument and will not provide habeas relief.

Petitioner also contends that there was insufficient evidence to support the negligent discharge of a firearm finding in the Mountain View incident. California Penal Code § 246.3(a) states, "[e]xcept as otherwise authorized by law, any person who willfully discharges a firearm in a grossly negligent manner which could result in injury or death to a person is guilty of a public offense and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170."

In this case, police received several reports of multiple gun shots being fired in the area where petitioner was living from around 2:22 am to 2:56 am on September 21, 2008.  RT at 817-18; CT at 285-89.  At approximately 6:40 am on September 21, 2008, police were performing a welfare check at petitioner's residence when they found him with a loaded semi-automatic assault weapon strapped to his chest in fire mode with six live rounds in the thirty round magazine.  RT at 918, 923-28.  There were two live rounds on petitioner's window sill and marks on the sill that were consistent with powder burns from firing a weapon and fifteen expended rounds on petitioner's dresser.  RT at 928, 998-1001.  Petitioner's truck which was parked in front of the window had

numerous bullet holes and fragments.  RT at 932-34, 959, 968, 1022-25, 1073-74, 1081.  At the time of his arrest, petitioner tested positive for codeine and had a blood alcohol level of .18 percent.  RT at 938.

While the evidence was circumstantial, it was sufficient for the jury to conclude that petitioner had fired his gun in a negligent manner that could have injured someone as he was in a residential neighborhood.  The state court denial of this claim was not an unreasonable application of <u>Jackson</u>.  In his petition, petitioner argues that the evidence presented regarding bullet trajectories from his window to the truck was faulty.  Petitioner relies on pictures he took using a different truck that he parked in what he states was the same location following his arrest and release, while the jury viewed evidence from the incident itself.  Petitioner's contentions lack merit.  At trial, petitioner testified that he accidently shot his truck several times while at friend's ranch out of the city.  That the jury did not credit the testimony will not lead to habeas relief and there was sufficient evidence for the jury to find him guilty of the charged crime.

### 6.    Prosecutorial Misconduct

Petitioner argues that the prosecutor engaged in several acts of misconduct.

Prosecutorial misconduct is cognizable in federal habeas corpus.  The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power.  <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).  A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  <u>Id.</u>  Under <u>Darden</u>, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness.  <u>Tan v. Runnels</u>, 413 F.3d 1101, 1112 (9th Cir. 2005).  A prosecutorial misconduct claim is decided "'on the merits, examining the entire proceedings to determine whether the prosecutor's remarks

1   so infected the trial with unfairness as to make the resulting conviction a denial of

2   due process.'" Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir.) (citation omitted).

3           Other factors which a court may take into account in determining whether

4   misconduct rises to a level of due process violation are: (1) the weight of evidence

5   of guilt, compare United States v. Young, 470 U.S. 1, 19 (1985) (finding

6   "overwhelming" evidence of guilt) with United States v. Schuler, 813 F.2d 978,

7   982 (9th Cir. 1987) (in light of prior hung jury and lack of curative instruction,

8   new trial required after prosecutor's reference to defendant's courtroom

9   demeanor); (2) whether the misconduct was isolated or part of an ongoing pattern,

10  see Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987); (3) whether the

11  misconduct relates to a critical part of the case, see Giglio v. United States, 405

12  U.S. 150, 154 (1972) (failure to disclose information showing potential bias of

13  witness especially significant because government's case rested on credibility of

14  that witness); and (4) whether a prosecutor's comment misstates or manipulates

15  the evidence, see Darden, 477 U.S. at 182.

16          The court has conducted an independent review of the record as this claim

17  was denied by the California Supreme Court without a reasoned opinion.

18  Petitioner asserts several separate incidents of misconduct.  He believes the

19  prosecutor dissuaded a defense witness from testifying, provided a prosecution

20  witness with confidential information, impugned the defense, impeached

21  petitioner's testimony with another witness, misstated the facts, improperly

22  vouched for prosecution witnesses, improperly commented on petitioner's right to

23  remain silent and shifted the burden of proof onto petitioner.

24          With respect to many of these claims, petitioner presents conclusory

25  allegations with little or no support.  Unsupported and "[c]onclusory allegations

26  which are not supported by a statement of specific facts do not warrant habeas

27

28                                          30

relief." <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994).  Moreover, the majority of allegations were not objected to during trial.  Under California law, claims of prosecutorial misconduct must be objected to at trial in order to be preserved upon appeal.  <u>See</u> <u>People v. Fosselman</u>, 33 Cal. 3d 572, 580-81 (1983).  A petitioner who fails to observe a state's "contemporaneous objection" rules may not challenge the constitutionality of the conviction in federal court.  <u>See</u> <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982).  Regardless, the court will address all the claims and notes that there was strong evidence of petitioner's guilt presented at trial.

Petitioner first contends that the prosecutor contacted the mother of a defense witness and told her that her son would be putting himself at risk of self-incrimination if he testified about petitioner shooting illegal assault weapons at a ranch.  It seems this witness would testify about petitioner accidentally shooting his car at a ranch, not at his home, but the witness declined to testify.  Petitioner includes a signed declaration from the mother, but nothing from the actual witness. Petition, Exh. 13.  Assuming for sake of argument that petitioner's allegations are accurate he is not entitled to habeas relief.  Petitioner presents no arguments on how this testimony was vital to his defense.  If this witness did testify that petitioner accidentally shot his car while at a ranch, there was still overwhelming evidence that petitioner discharged the assault weapon several times outside the window of his home.  There were several 911 calls reporting multiple gunshots in the area petitioner lived.  Only a few hours later police found petitioner at his home with the loaded weapon, there were spent cartridges and powder burns on his window sill.  Any error did not infect the trial with unfairness to warrant habeas relief.  Petitioner also argues that the prosecutor improperly mentioned petitioner's failure to call this witness.  This argument fails as a prosecutor may properly comment upon a defendant's failure to present

witnesses so long as it is not phrased to call attention to defendant's own failure to testify.  See United States v. Castillo, 866 F.2d 1071, 1083 (9th Cir. 1988).

Petitioner states that a prosecution witness was provided with confidential information.  Petitioner is referring to a witness who viewed his report that he filed with police regarding hearing gunshots and viewed the report to refresh his recollection.  RT at 1123-24.  This was not confidential information or misconduct.

Nor did the prosecutor impugn the defense by stating petitioner had the opportunity to listen to witness testimony before he testified.  A defendant's Fifth and Sixth Amendment and due process clause rights are not violated by the prosecutor's comment in closing argument that the defendant had been present in court throughout the trial and thus had an opportunity to hear the testimony of the other witnesses and tailor his testimony accordingly.  See Portuondo v. Agard, 529 U.S. 61, 73-75 (2000).

That the prosecutor was allowed to present a witness to impeach part of petitioner's testimony and the impeachment evidence revealed prior contact with police was not so prejudicial to violate due process and warrant habeas relief. Nor was there misconduct when the prosecutor used the word 'triangulate' to discuss how officers attempted to locate the area of the gunshots based on the 911 calls.  Use of this word did not mislead the jury into believing that police had used special technological equipment that exists in some areas to discover the location of the gunshots.

In closing arguments the prosecutor stated that the victims in the San Jose case testified honestly about what happened and that they and the police officers are not proven liars.  RT at 1457, 1489.  To warrant habeas relief, prosecutorial vouching must so infect the trial with unfairness as to make the resulting

32

conviction a denial of due process.  Davis v. Woodford, 384 F.3d 628, 644 (9th Cir. 2004) (citation omitted).  Petitioner presents no arguments regarding how the prosecutor's few statements infected the trial with unfairness and any error was isolated and harmless.

In closing arguments, the prosecutor also stated while referring to petitioner, "[w]hat about the Mountain View case?  He then says that, you know, there's a mountain of evidence in that case.  He decides that he's not going to talk to the officers that day.  And that's his right."  RT at 1490.  Trial counsel objected and the trial court sustained the objection and instructed the jury to disregard the remark.  Id.  Petitioner has failed to even present any arguments on how this statement rendered the trial fundamentally unfair especially in light of the instruction of the trial court.  Moreover, the prosecutor was referencing petitioner's own testimony from the trial.  RT at 1393-94.

Finally, petitioner argues that the prosecutor shifted the burden of proof by stating that petitioner could have subpoenaed witnesses, requested additional lab tests or provided pictures of the barn where petitioner allegedly shot his car.  Other than citing to excerpts from the transcripts, petitioner has again failed to provided any arguments in support.  The prosecutor is allowed to comment on the evidence and did not improperly shift the burden of proof.  Any error did not render the trial fundamentally unfair, especially in light of all the evidence against petitioner.  For all these reasons, petitioner's claim of prosecutorial misconduct is denied.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is

1  DENIED.[8]

2       Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a

3  certificate of appealability (COA) under 28 U.S.C. § 2253(c) is DENIED because

4  petitioner has not demonstrated that "reasonable jurists would find the district

5  court's assessment of the constitutional claims debatable or wrong." Slack v.

6  McDaniel, 529 U.S. 473, 484 (2000).

7       The clerk shall enter judgment in favor of respondent and close the file.

8  SO ORDERED.

9  DATED:   November 18, 2013

10  CHARLES R. BREYER
    United States District Judge

13  G:\PRO-SE\CRB\HC.12\Arizmendi, A.12-4555.hc.ab.wpd

---

26      [8] Contrary to petitioner's suggestions, an evidentiary hearing is not necessary to
27  resolve the claims.  See Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998).

28  34